IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

LIANA MARIE ORTEGA,

    Plaintiff,

v.                                                                                       Civ. No. 2:22-0322 KRS

KILOLO KIJAKAZI, *Acting Commissioner*
*of the Social Security Administration*,

    Defendant.

## **MEMORANDUM OPINION AND ORDER**

THIS MATTER is before the Court upon Plaintiff Liana Marie Ortega's ("Plaintiff") Motion to Reverse and Remand Administrative Agency Decision with Supporting Memorandum (Doc. 18), dated October 28, 2022, challenging the determination of the Commissioner of the Social Security Administration ("SSA") that she is not entitled to disability benefits under Title II and Title XVI of the Social Security Act, 42 U.S.C. §§ 401–34, 1381–83f. The Commissioner responded to Plaintiff's Motion on December 30, 2022 (Doc. 19), and Plaintiff filed a reply brief on January 13, 2023 (Doc. 20). With the consent of the parties to conduct dispositive proceedings in this matter, *see* 28 U.S.C. § 636(c); Fed. R. Civ. P. 73(b), the Court has considered the parties' filings and has thoroughly reviewed the administrative record. Having done so, the Court concludes that the Administrative Law Judge ("ALJ") erred in his decision and will therefore **GRANT** Plaintiff's Motion and remand this case back to the SSA for proceedings consistent with this opinion.

### I.    Procedural Posture

On April 15, 2020, Plaintiff filed an application for disability insurance benefits and an application for supplemental security income. (*See* Administrative Record ("AR") at 65, 240–

1

52). In both applications, Plaintiff alleged disability beginning on December 18, 2019, due to anxiety, type 1 bipolar disorder, post-traumatic stress disorder ("PTSD"), type 2 diabetes, and low blood pressure. (*Id.* at 73, 85). Plaintiff's applications were denied at the initial level on September 24, 2020 (*id.* at 144–49), and at the reconsideration level on February 4, 2021 (*id.* at 160–69). Plaintiff requested a hearing (*id.* at 170–71), which ALJ Gordon Momcilovic conducted telephonically on September 14, 2021 (*id.* at 39–60). Plaintiff was represented by counsel and testified at the hearing, as did vocational expert Wallace Stanfill (the "VE"). (*Id.*).

On October 4, 2021, the ALJ issued his decision, finding that Plaintiff was not disabled under the relevant sections of the Social Security Act. (*Id.* at 13–31). Plaintiff requested that the Appeals Council review the ALJ's decision (*id.* at 237–39), and on March 4, 2022, the Appeals Council denied the request for review (*id.* at 2–7), which made the ALJ's decision the final decision of the Commissioner. *See Doyal v. Barnhart*, 331 F.3d 758, 759 (10th Cir. 2003). On April 28, 2022, Plaintiff filed the Complaint in this case seeking review of the Commissioner's decision. (Doc. 1).

## II.   LEGAL STANDARDS

### A. Standard of Review

Judicial review of the Commissioner's decision is limited to determining "whether substantial evidence supports the factual findings and whether the ALJ applied the correct legal standards." *Allman v. Colvin*, 813 F.3d 1326, 1330 (10th Cir. 2016) (citing *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007)); *see also* 42 U.S.C. § 405(g). If substantial evidence supports the ALJ's findings and the correct legal standards were applied, the Commissioner's decision stands and the plaintiff is not entitled to relief. *See, e.g.*, *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004). Although a court must meticulously review the entire record, it "may

neither reweigh the evidence nor substitute [its] judgment for that of the [Commissioner]." *See, e.g.*, *id.* (quotation omitted).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *See Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quotation omitted); *Langley*, 373 F.3d at 1118 (quotation omitted). Although this threshold is "not high," evidence is not substantial if it is "a mere scintilla," *Biestek*, 139 S. Ct. at 1154 (quotation omitted); "if it is overwhelmed by other evidence in the record[,]" *Langley*, 373 F.3d at 1118 (quotation omitted); or if it "constitutes mere conclusion[,]" *Grogan v. Barnhart*, 399 F.3d 1257, 1261–62 (10th Cir. 2005) (quotation omitted). Thus, the Court must examine the record as a whole, "including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan*, 399 F.3d at 1262 (citation omitted). While an ALJ need not discuss every piece of evidence, "[t]he record must demonstrate that the ALJ considered all of the evidence," *Clifton v. Chater*, 79 F.3d 1007, 1009–10 (10th Cir. 1996) (citation omitted), and "a minimal level of articulation of the ALJ's assessment of the evidence is required in cases in which considerable evidence is presented to counter the agency's position." *Id.* at 1010 (quotation omitted). "Failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal." *Byron v. Heckler*, 742 F.2d 1232, 1235 (10th Cir. 1984) (quotation and citation omitted).

**B. Disability Framework**

"Disability," as defined by the Social Security Act, is the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to

last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). The SSA has devised a five-step sequential evaluation process to determine disability. *See Barnhart v. Thomas*, 540 U.S. 20, 24 (2003); *Wall v. Astrue*, 561 F.3d 1048, 1051–52 (10th Cir. 2009); 20 C.F.R. §§ 404.1520, 416.920. If a finding of disability or non-disability is directed at any point, the SSA will not proceed through the remaining steps. *Thomas*, 540 U.S. at 24. At the first three steps, the ALJ considers the claimant's current work activity and the severity of the claimant's impairment or combination of impairments. *See id.* at 24–25. If no finding is directed after the third step, the Commissioner must determine the claimant's residual functional capacity ("RFC"), or the most that the claimant is able to do despite his or her limitations. *See* 20 C.F.R. §§ 404.1520(e), 404.1545(a)(1), 416.920(e), 416.945(a)(1). At step four, the claimant must prove that, based on the claimant's RFC, the claimant is unable to perform the work he or she has done in the past. *See Thomas*, 540 U.S. at 25. If the claimant meets "the burden of establishing a prima facie case of disability[,] . . . the burden of proof shifts to the Commissioner at step five to show that" the claimant retains sufficient RFC "to perform work in the national economy, given his age, education and work experience." *Grogan*, 399 F.3d at 1261 (citation omitted); *see also Williams v. Bowen*, 844 F.2d 748, 750–51 (10th Cir. 1988) (discussing the five-step sequential evaluation process in detail).

### III.   THE ALJ'S DETERMINATION

ALJ Momcilovic reviewed Plaintiff's claims pursuant to the five-step sequential evaluation process. First, the ALJ determined that Plaintiff met the SSA's insured status requirements through the relevant period and had not engaged in substantial, gainful activity since her alleged onset date of December 18, 2019. (AR at 18). At step two, the ALJ found that Plaintiff had the following severe impairments: generalized anxiety disorder/panic disorder with

4

agoraphobia, PTSD, bipolar I disorder/depressive disorder, and cluster B personality disorder. (*Id.* at 19). The ALJ also found that Plaintiff's type II diabetes and obesity were non-severe impairments. (*Id.*). At step three, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met the criteria of listed impairments under Appendix 1 of the SSA's regulations. (*Id.* at 19–21).

Moving to the next step, the ALJ reviewed the evidence of record, including medical opinions and evidence from treating and consulting providers, prior administrative medical findings, and Plaintiff's own subjective symptom evidence. (*See id.* at 21–28). Having done so, the ALJ concluded that Plaintiff had the RFC to perform a full range of work at all exertional levels but with the following non-exertional limitations: she "retains the ability to understand, remember, and carry out simple job instructions and work-related tasks in jobs involving only occasional interaction with supervisors, coworkers, and the general public." (*Id.* at 21). Based on this RFC, the ALJ found that Plaintiff was unable to perform her past relevant work. (*Id.* at 28–29). Moving to step five, the ALJ determined that Plaintiff was not disabled because she could perform other jobs that exist in significant numbers in the national economy, such as laundry worker and office cleaner. (*Id.* at 29–30).

## IV.   DISCUSSION

Plaintiff raises three arguments on appeal. First, Plaintiff argues that the ALJ's RFC determination does not account for the ALJ's "paragraph B" findings at steps two and three regarding concentration, persistence, and pace. (*See* Doc. 18-1 at 12–18). Second, Plaintiff contends that the ALJ failed to properly assess the opinions of psychological consultative examiner Dr. James Schutte, Ph.D. (*Id.* at 18–21). Third, Plaintiff contends that the ALJ erred in his consideration of the opinions of Plaintiff's treating mental health providers, licensed clinical

counselor Brenda Abercrombie and nurse practitioner Margaret Wood. (*Id.* at 21–23). The Court agrees that the ALJ failed to properly assess Dr. Schutte's opinions and, without reaching the other claims of error, remands on that basis.

**A. Dr. Schutte**

Plaintiff contends that the ALJ failed to properly assess the opinions of consultative examining psychologist James Schutte, Ph.D. (*See* Doc. 18-1 at 18–21). Dr. Schutte evaluated Plaintiff at the request of Disability Determination Services on September 4, 2020. (AR at 687–90). During the consultative examination, Dr. Schutte interviewed Plaintiff, reviewed her medical records, and administered testing, including the Wechsler Adult Intelligence Scale-Fourth Edition (WAIS-IV) Digit Span subtest. (*Id.*)

**1. Dr. Schutte's Report**

Based on his review of Plaintiff's mental health records, Dr. Schutte noted that Plaintiff had been diagnosed with bipolar I disorder, a substance-induced psychotic disorder, stimulant (methamphetamine) use disorder, PTSD, and generalized anxiety disorder, among other conditions. (AR at 688).

In his report, Dr. Schutte made the following findings based on his mental status examination of Plaintiff: he found she was oriented in terms of person, place, and time; her cognitive functions were intact and she was alert and responsive to her surroundings; her speech was intelligible but circumstantial; her long-term memory seemed grossly intact and her immediate memory was "measured to be grossly intact, as she reproduced fifteen out of fifteen items she had been shown and asked to recall"; her attention and concentration "appeared within normal limits . . . as she was able to attend to questions and focus on the flow of the evaluation"; she was not hyperactive; she scored in the average range on the WAIS-IV digit span subtest; her

thought processes were persecutory in nature; her mood was depressed and affect was constricted, but she maintained eye contact and was cooperative during the examination. (AR at 688–89). Dr. Schutte also questioned Plaintiff about her ability to engage in various activities of daily living. (AR at 689). Plaintiff responded that she was able to care for her daily living needs. (*See id.*).

In the summary portion of his report, Dr. Schutte opined that Plaintiff's attention and concentration "were measured to be in the borderline range," that Plaintiff had no reported limitations with respect to adaptive behavior, and that Plaintiff's "ability to reason seems moderately impaired due to bipolar disorder and anxiety." (AR at 689). Finally, Dr. Schutte opined that Plaintiff's "ability to make occupational, social, and personal adjustments seems markedly impaired due to bipolar disorder and anxiety." (*Id.* at 690).

**2. The ALJ's Consideration of Dr. Schutte's Opinions**

Because Plaintiff applied for disability benefits after March 27, 2017, the ALJ was required to evaluate Dr. Schutte's opinions in the summary section of his report under the revised regulations found in 20 C.F.R. §§ 404.1520c and 416.920c. *See Zhu v. Comm'r, SSA*, No. 20-3180, 2021 WL 2794533, at *4 & n.8 (10th Cir. July 6, 2021). Under the revised regulations, no specific evidentiary weight or deference is given to medical opinions or prior administrative findings. *See* 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, they are evaluated on equal footing using the factors enumerated in the regulations. *See id.* §§ 404.1520c(c)(1)–(5), 416.920c(c)(1)–(5).

The revised regulations, however, impose certain "articulation requirements" on an ALJ. *See id.* §§ 404.1520c(b), 416.920c(b). First, "when a medical source provides multiple medical opinion(s)," the ALJ need not articulate how he considered each individual medical opinion, but

7

he must "articulate how [he] considered the medical opinions . . . from that medical source together in a single analysis." *Id.* §§ 404.1520(c)(b)(1), 416.920c(b)(1). Second, an ALJ must consider five factors when evaluating medical opinion evidence, *id.* §§ 404.1520c(c)(1)–(5), 416.920c(c)(1)–(5); however, he is generally only required to *articulate* his consideration of two of those factors: supportability and consistency. *Id.* §§ 404.1520c(b)(2), 416.920c(b)(2). Third and finally, if differing medical opinions are equally well-supported and consistent with the record, the ALJ must then "articulate how [he] considered the other most persuasive factors[,]" including the source's relationship with their client, any specialization, and other factors that tend to support or contradict the opinion or finding. *Id.* §§ 404.1520c(b)(3), 404.1520c(c)(3)–(5), 416.920c(b)(3), 416.920c(c)(3)–(5).

Although the ALJ is generally "not required to discuss every piece of evidence," *see Clifton*, 79 F.3d at 1009–10, he has, at minimum, a duty to address the persuasive value of medical opinions and prior administrative findings. *See id.* The new regulations do not alter the standard of review, however. Thus, an ALJ's persuasiveness finding "is not based on substantial evidence if it is overwhelmed by other evidence in the record," *Langley*, 373 F.3d at 1118 (quotation omitted), or if it "constitutes mere conclusion," *Misgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992) (citation omitted). As before, an ALJ must "consider all relevant evidence in the case record," *Silva v. Saul*, No. 19-cv-913, 2020 WL 4220862, at *4 (D.N.M. July 23, 2020) (citing 20 C.F.R. §§ 404.1520b, 416.920b), and must provide the Court with a "sufficient basis to determine that appropriate legal principles have been followed[,]" *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (quotation omitted).

In the Motion, Plaintiff contends that the ALJ failed to adequately explain how he considered the supportability and consistency factors when he analyzed Dr. Schutte's opinions.

8

(*See* Doc. 18-1 at 19–21). The supportability factor considers how well a medical source supported his own opinions with "objective medical evidence" and "supporting explanations." 20 C.F.R. § 404.1520c(c)(1). "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s)[,] . . . the more persuasive the medical opinions . . . will be." *Id.* The consistency factor calls for a comparison between a medical source's opinions and "the evidence from other medical sources and nonmedical sources" in the record. 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2). The more consistent the findings are with the other evidence, the more persuasive they will be. *Id.* Although the regulations do not prescribe the depth with which an ALJ must discuss these factors, the "explanation must at least '[e]schew[ ] rote analysis and conclusory explanations [and] discuss . . . the crucial factors in any determination with sufficient specificity to enable the reviewing court to decide whether the determination is supported by substantial evidence . . . ." *Frazer v. Kijakazi*, No. 20-cv-1147, 2022 WL 682661, at *5 (D.N.M. Mar. 8, 2022) (quoting *Pamela P. v. Saul*, No. 3:19-cv-575, 2020 WL 2561106, at *5 (N.D.N.Y. May 20, 2020)) (subsequent citations omitted).

      Here, the ALJ found the "opinions stated by Dr. Schutte in the 'summary' of his report to be *unpersuasive* overall." (AR at 26). The ALJ gave two reasons for finding Dr. Schutte's opinions unpersuasive. First, the ALJ found Dr. Schutte's opinion that Plaintiff had *borderline* attention and concentration was "wholly unsupported by his own objective findings" as Dr. Schutte stated earlier in his report that he "observed [Plaintiff's] attention and concentration to be within *normal* limits during the interview" and Plaintiff scored in the average range on the WAIS-IV digit span subtest. (AR at 26) (emphasis added). Second, the ALJ found Dr. Schutte's opinion that Plaintiff was markedly impaired in her ability to make occupational, social, and

9

personal adjustments was "inconsistent with the activities of daily living" that Plaintiff herself reported to Dr. Schutte. (*Id.*). In particular, the ALJ noted that Plaintiff reported to Dr. Schutte that "she could follow instructions and carry out simple tasks, that she is able to get along with others and that she has friends, and – *most notably* – that she felt able to work." (*Id.*)

The Court agrees with Plaintiff that the ALJ's persuasiveness analysis of Dr. Schutte's opinions failed to meet the articulation requirements set forth in the new regulations. Both reasons the ALJ gave for finding Dr. Schutte's opinions unpersuasive—i.e., that the opinions were unsupported by Dr. Schutte's own examination findings—go to the supportability factor. As Plaintiff points out, the ALJ did not address the consistency factor at all in his analysis of the persuasiveness of Dr. Schutte's opinions. Although the ALJ stated earlier in his decision that Dr. Schutte's mental status examination findings were similar to findings made in contemporaneous primary care treatment notes, (*see* AR at 23–24), the ALJ did not later offer this as a specific reason for finding Dr. Schutte's opinions unpersuasive (*see* AR at 26). Simply put, the ALJ's persuasiveness evaluation did not mention the consistency of Dr. Schutte's opinions with any other evidence of record, much less the contemporaneous treatment notes from Plaintiff's primary care providers. The Court may not provide reasons *post hoc* that the ALJ himself did not provide in his persuasiveness evaluation. *See Carpenter v. Astrue*, 537 F.3d 1264, 1267 (10th Cir. 2008) ("Judicial review is limited to the reasons stated in the ALJ's decision.") (citation omitted).

For her part, the Commissioner claims that the ALJ "discharged his duty to assess consistency when he compared Dr. Schutte's opinion with his own examination report's testing results and examination findings." (Doc. 19 at 17). The Commissioner's argument conflates the supportability factor with the consistency factor, which as the Court discussed earlier, calls for a

comparison between a medical source's opinion and "evidence from *other* medical sources and nonmedical sources" in the record. *See* 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2) (emphasis added). Because no such analysis took place, the Court concludes that the ALJ's analysis of Dr. Schutte's opinions fails to pass muster.

The ALJ's failure to adequately articulate the consistency factor only constitutes "harmless error if there is no inconsistency between the opinion and the ALJ's assessment of residual functional capacity." *See Mays v. Colvin*, 739 F.3d 569, 578–79 (10th Cir. 2014) (citation omitted). In such a case, the claimant is not prejudiced because the outcome would have remained the same even if the medical opinion was determined to be persuasive. *See id.* at 579. Here, though, Dr. Schutte's opinion that Plaintiff was markedly impaired in her ability to make occupational, social, and personal adjustments is inconsistent with the ALJ's RFC determination allowing occasional interaction with supervisors, coworkers, and the general public. Had the ALJ found Dr. Schutte's opinions persuasive, he would have assigned Plaintiff a more restrictive RFC, which in turn would have resulted in different findings at steps four and five. The ALJ's failure to adequately explain his rejection of Dr. Schutte's opinions was not harmless. Remand is therefore required for the proper consideration of Dr. Schutte's opinions.

### B. Other Claims

Because a reevaluation of Dr. Schutte's opinions may impact the other determinations at issue in this proceeding, the Court will remand on this basis without addressing Plaintiff's other claims of error. *See Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003).

### V.   CONCLUSION

Based on the foregoing, the Court concludes that the ALJ failed to adequately evaluate medical opinion evidence from Dr. Schutte in accordance with controlling legal standards.

Accordingly, Plaintiff's Motion to Reverse and Remand Administrative Agency Decision (Doc. 18) is **GRANTED**, and the Court remands this case back to the Social Security Administration for proceedings consistent with this opinion.

*[signature: Kevin Sweazea]*

**KEVIN R. SWEAZEA**
**UNITED STATES MAGISTRATE JUDGE**
**Presiding by Consent**